John A.V. Nicoletti, Esq.
NICOLETTI HORNIG & SWEENEY
Wall Street Plaza
88 Pine Street, 7th Floor
New York, New York 10005-1801
Tel: (212) 220-3830
*Attorneys for Plaintiff*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

STARR INDEMNITY & LIABILITY CO.
A/S/O AND AS ASSIGNEE OF ALL RIGHTS
OF GENESIS MARINE, LLC,                                    Civil Action No.:

                          Plaintiff,

        vs.

WATER QUALITY INSURANCE SYNDICATE,

                          Defendant,
---------------------------------------------------------------X

## COMPLAINT

The Plaintiff STARR INDEMNITY & LIABILITY CO. a/s/o and as assignee of all rights

of GENESIS MARINE, LLC (hereinafter sometimes referred to as "STARR" or "Plaintiff"), by

its attorneys, Nicoletti Hornig & Sweeney, as and for a Complaint against Defendant Water

Quality Insurance Syndicate (hereinafter sometimes referred to as "WQIS" or "Defendant")

alleges upon information and belief as follows:

## JURISDICTION

1.      The following issues constitute questions of insurance coverage under an

admiralty and maritime insurance policy and thereby come within the federal question and

admiralty and maritime jurisdiction of the United States Courts pursuant to 28 U.S.C. § 1331 and

1333, and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.     An actual controversy of a justiciable nature exists between Plaintiff STARR and the Defendant WQIS concerning their respective rights, obligations and/or legal relationships, as well as the interpretation of a certain marine insurance policy issued by WQIS and the aforesaid controversy can be determined by a judgment of this Court, without further suit.

3.     Venue is proper because a substantial part of the events and/or omissions giving rise to the claims herein occurred in this jurisdiction.

## PARTIES

4.     At all material times, STARR was and is an insurance company duly organized under and existing by virtue of the laws of the State of Texas with its principal place of business in New York.

5.     Although not a party to this action, at all material times, GENESIS was and is a limited liability company, organized and existing under the laws of the State of Delaware, with its principal place of business located in Houston, Texas.

6.     At all material times, WQIS was and is an insurance syndicate, with its principal place of business in New York.  WQIS transacts business in the State of New York and has issued pollution liability insurance policies to insureds/domiciliaries of several states of the United States, including GENESIS.

7.     Defendant WQIS is being sued in its capacity as the managing general agent of a particular syndicate of insurers, who has full authority to confirm coverage and make payments under the WQIS Policy at issue herein.  The identity of the syndicate members are identified on the subscription page of the WQIS Policy, which is contained in Exhibit A.

## NATURE OF THE ACTION

8.     By this Action, Plaintiff STARR seeks judgment against Defendant WQIS with respect to a certain policy of insurance no. 46-80019 (the "WQIS Policy") for pollution control cost and expenses incurred and paid as a result of the grounding of Barges GM-5001 and GM-5002, which occurred on April 6, 2014, in and on the Upper Mississippi River in the area of Mile 83.5, which is in the vicinity of Chester, Illinois.

9.     A true and accurate copy of the WQIS Policy is attached hereto as Exhibit A.

10.     Plaintiff STARR is a duly subrogated insurer of GENESIS who has been assigned all rights of GENESIS against WQIS with respect to the pollution control cost and expenses incurred and paid as a result of the April 6, 2014 grounding of Barges GM-5001 and GM-5002.

11.     As GENESIS's insurer, plaintiff STARR has reimbursed and/or paid in excess of $3.4 million in pollution control costs and expenses related to this incident.

## FACTUAL BACKGROUND

12.     At all material times, GENESIS was and is the owner of Barge GM-5001, an unmanned, non-self propelled, double hull, steel tank barge, bearing official number 1192378, measuring approximately 297.5 feet in length and 54 feet in breadth.

13.     At all material times, GENESIS was and is the owner of Barge GM-5002, an unmanned, non-self propelled, double hull, steel tank barge, bearing official number 1185629, measuring approximately 297.5 feet in length and 54 feet in breadth.

14.     At all material times, GENESIS was and is the owner of the M/V KAREN PAPE a twin screw towboat, bearing official number 1216948, measuring approximately 90 feet in length and 32 feet in breadth.

15.     At all material times, the M/V KAREN PAPE and Barges GM-5001 and GM-5002 were in all respects tight, staunch, strong, equipped and supplied, and in all respects seaworthy and fit for the service in which they were engaged.

16.     On April 6, 2014, Barges GM-5001 and GM-5002 were being pushed by the M/V KAREN PAPE.

17.     Upon information and belief, at approximately 1750 hours local time on April 6, 2014, Barges GM-5001 and GM-5002 grounded on the Upper Mississippi River in the area of Mile 83.5 while they were being pushed by the M/V KAREN PAPE.

18.     At the time of the grounding, Barges GM-5001 and GM05002 were laden with 16,701.8 and 14,841.3 barrels of decant oil, respectively.

19.     As a result of the grounding and environmental conditions present in the area at that time, there was a substantial threat that the decant oil would discharge from Barges GM-5001 and GM-5002 and into the Upper Mississippi River.

20.     Accordingly, a vessel response plan was executed and a Command Post was set-up to respond to the substantial threat of discharge.

21.     GENESIS was required to undertake pollution control measures to respond to the substantial threat of discharge; and incur fiscal responsibility for the same, which has resulted in cost and expenses incurred and paid by GENESIS and/or STARR (on behalf of GENESIS) in excess of $3.7 million.

22.     The WQIS Policy provides primary pollution liability insurance to GENESIS with the effective dates of July 18, 2013 through July 18, 2014.

23.    The WQIS Policy states in relevant part:

### Water Quality Insurance Syndicate
### Policy Form 2011

## PART I – INSURING PROVISIONS

In consideration of the premium set forth on the Declarations Page of the **Policy**, and subject to the TERMS, CONDITIONS, LIMITATIONS, WARRANTIES, EXCLUSIONS and DEFINITIONS (as contained in PART V and shown in **bold type** face herein) of this **Policy**, the Subscribers to the WATER QUALITY INSURANCE SYNDICATE, as shown on the Signature Page hereof, hereafter "WQIS," do hereby agree to:

Indemnify the **Assured** for such amounts as the **Assured** shall have become liable to pay and shall have paid for pollution response or damages, solely in its capacity as **Owner** and/or **Operator** of the **Vessel(s)** named on the Vessel Schedule**,**

and

reimburse the **Assured** with respect to an **Occurrence** for certain other costs and expenses, as described below, which the **Assured** shall have incurred in its capacity as **Owner** and/or **Operator** of the **Vessel(s)** ) named in the Vessel Schedule by reason of or with respect to SECTIONS A through H of Part I of the **Policy** under the following coverages:

### SECTION A

*Discharges, Releases or the Substantial Threat of a Discharge or Release*

1)    *Oil Pollution Act of 1990* (33 U.S.C. Sec. 2701-2762), *hereinafter "OPA"* - Liability to the United States or to any **Claimant** imposed under Subchapter I of OPA and costs and expenses incurred by the **Assured** for **Removal** and damages under the OPA for which liability would have been imposed under Subchapter I, had the **Assured** not undertaken such liability voluntarily;

2)    *Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. Sec. 9601-9675), hereinafter "CERCLA"* - Liability to the **United States** or to any **Claimant** imposed under Section 9607(a)(1) of CERCLA and costs and damages incurred by the **Assured** for **Removal, Response** or **Remedial Action** for which liability would have been imposed under Section 9607(a)(1) of CERCLA had the **Assured** not undertaken such **Removal, Response** or **Remedial Action** voluntarily and liability arising from the sudden, accidental discharge, spillage4, release,

leakage or emission of a **Hazardous Substance** into or upon **Navigable Waters** or adjoining shorelines for any of the following damages:

    (a) Injury to, or economic losses resulting from destruction of or damage to real property, personal property or **Natural Resources**;

    (b) Loss of subsistence use of **Natural Resources** that have been injured, destroyed, or lost; and

    (c) Loss, damage, cost, liability or expense recoverable from the **Assured** by a third party to the same extent that the third party could have recovered had they been an **Assured** under this SECTION A(2) of PART I of the **Policy**.

\* \* \*

## PART II – LIMIT OF LIABILITY

The MAXIMUM AMOUNT PAYABLE UNDER THIS POLICY for each liable **Vessel** in respect to each **Occurrence** for al the combined coverage under PART I of the **Policy** shall not exceed the limit of liability shown on the Vessel's Schedule.

\* \* \*

## PART IV – GENERAL TERMS, CONDITIONS AND LIMITATIONS

\* \* \*

### *SECTION B*

(1) This **Policy** is deemed to have been issued to the **Assured** in New York, New York, and the law applicable to the interpretation of this **Policy** of insurance and the rights and obligations of WQIS and the **Assured** hereunder shall be federal maritime law or, in the absence of federal maritime law, the law of the State of New York, without regard for New York's choice of law rules.

(2) Should there be any dispute arising out of or in any way concerning this **Policy** or the coverage provided by WQIS to the **Assured(s)** hereunder, which results in any lawsuit or other legal action against WQIS by the **Assured(s)**, such lawsuit or legal action shall be brought by the **Assured(s)** in the United States District Court for the Southern District of New York, and WQIS consents to the jurisdiction of that Court for all such lawsuits or legal actions. Notwithstanding the foregoing, any lawsuit or legal action brought by WQIS against any **Assured** with respect to disputes concerning or arising from this

**Policy**, whether on account of premium owed or otherwise, may be brought by WQIS in any Court of competent jurisdiction in the **United States**.

24.     Section A of the WQIS Policy provides $5 million in coverage for, among other things, pollution control costs and expenses incurred to respond to a substantial threat of discharge of oil and/or hazardous substances on or into navigable waterways.

25.     The M/V KAREN PAPE and Barges GM-5001 and GM-5002 are scheduled vessels on the WQIS Policy.

26.     Immediately after the grounding of Barges GM-5001 and GM-5002 GENESIS provided WQIS with timely notice.

27.     Despite providing reimbursement coverage for the pollution control costs and expenses incurred and paid by or on the behalf of GENESIS as a result of the grounding of Barges GM-5001 and GM-5002, WQIS has wrongfully refused to honor its contractual obligations and declined to reimburse the same under the WQIS Policy.

## AS AND FOR A FIRST CAUSE
## OF ACTION FOR BREACH OF CONTRACT

28.     Repeats and realleges the allegations set forth in paragraphs "1" through "27," as if more fully set forth at length herein.

29.     In and by the terms of the WQIS Policy, WQIS is obligated to reimburse those pollution control costs and expenses incurred and paid by or on the behalf of GENESIS to respond to the substantial threat of discharge of decant oil following the April 6, 2014, grounding of Barges GM-5001 and GM-5002.

30.     GENESIS incurred and has paid pollution control costs and expenses in an amount in excess of $3.7 million.

31.     WQIS has wrongfully declined coverage under the WQIS Policy to reimburse GENESIS for the pollution control costs and expenses incurred and paid as a result of the April 6, 2014, grounding of Barges GM-5001 and GM-5002.

32.     By virtue of the foregoing premises, WQIS has breached its contract with GENESIS and is therefore liable for the full amount of pollution control costs and expense incurred and paid as a result of the April 6, 2014 grounding of Barges GM-5001 and GM-5002.

**WHEREFORE**, Plaintiff Starr Indemnity & Liability Co. prays that:

A.      Judgment on the First Cause of Action in favor of Plaintiff Starr Indemnity & Liability Co. against Defendant Water Quality Insurance Syndicate for the total amount of pollution control costs and expenses incurred to respond to the April 6, 2013 grounding of Barges GM-5001 and GM-5002; and

B.      For whatever other and further relief this Court deems just and proper;

together with the cost and disbursements of this action.

Dated: New York, New York
       March 30, 2015

Respectfully submitted,
NICOLETTI HORNIG & SWEENEY
*Attorneys for Plaintiff*
*Starr Indemnity & Liability Co.*

By: _____
John A.V. Nicoletti (JN-7174)
Guerric S.D.L. Russell (GR-4845)
Wall Street Plaza
 88 Pine Street, 7th Floor
New York, New York 10005-1801
Tel:    (212) 220-3830
Fax:    (212) 220-3780
Email: jnicoletti@nicolettihornig.com
File No.:  28000071

X:\Public Word Files\28\71\Complaint (Final) 3.30.15 s.lck.doc

# EXHIBIT A

# EXHIBIT A

# EXHIBIT A



*Sail with Experience*

# WATER QUALITY INSURANCE SYNDICATE
## WORLDWIDE VESSEL POLLUTION POLICY FORM 2011
### DECLARATIONS PAGE

**POLICY NUMBER:** 46-80019

The Subscribers referred to in the **Policy** as **WQIS,** each severally, but not jointly, and not on the part of one for the other or any of the others, for their respective proportions as set forth herein, do protect the **Assured** in respect of the **Vessel(s)**, all as described herein, subject to the terms, conditions, limit of liability, warranties, exclusions, endorsements, definitions and other terms of this **Policy.**

**Assured:**   GENESIS MARINE, LLC
GENESIS CRUDE OIL, L.P.
GENESIS ENERGY, LLC
GENESIS ENERGY, L.P.
919 MILAM SUITE 2100
HOUSTON TX      77002

Loss Payee: Loss, if any, is payable only to:      GENESIS MARINE, LLC                    or order
of the Loss Payee.

Inception Date and Time:   07-18-13       12:01 am Central Standard Time.

Expiration Date and Time:   07-18-14       12:01 am Central Standard Time.

Broker of Record:   MCGRIFF, SEIBELS &
WILLIAMS OF MISSOURI, INC.
7711 BONHOMME AVE
SUITE 900
ST LOUIS      MO 63105

### Vessel Premium:
OPTIONAL COVERAGE(S)

### Total Premium:

The **Vessel(s)** insured and gross tonnage(s) and other **Vessel** information are as per the attached Vessel Schedule, which forms a part of this Declarations Page, and which also shows the limit of Liability and premiums which are applicable for this **Policy**.

In the event of cancellation of this **Policy** at the request of the **Assured** under SECTION D of PART IV of the **Policy**, a minimum fully earned premium of                    will be retained by WQIS.

**IN THE EVENT OF ANY OCCURRENCE OR INCIDENT WHICH MAY GIVE RISE TO A CLAIM UNDER THIS POLICY, IT IS WARRANTED THAT THE ASSURED SHALL GIVE IMMEDIATE NOTICE TO WQIS OF SAID OCCURRENCE OR INCIDENT BY TELEPHONE AT 1-800-736-5750. NOTICE BY EMAIL AND/OR FACSIMILE AND/OR OTHER ELECTRONIC MEANS SHALL NOT CONSTITUTE IMMEDIATE NOTICE.**

© Wall Street Marine, Inc. 1998 – 2007
4/20/07

**WATER QUALITY INSURANCE SYNDICATE**
**WORLDWIDE VESSEL POLICY FORM 2011**
**VESSEL SCHEDULE**

ASSURED -   GENESIS MARINE, LLC
GENESIS CRUDE OIL, L.P.
GENESIS ENERGY, LLC
GENESIS ENERGY, L.P.
919 MILAM SUITE 2100
HOUSTON TX     77002

POLICY   No. -   46-80019

POLICY PERIOD -   July 18, 2013     TO   July 18, 2014

| VESSEL TYPE VESSEL NAME | GROSS TONS | Limit | PREMIUM |
|---|---|---|---|
| TANK BARGE / DOUBLE HULL / TANK VESSEL | | | |
| GM 3801 | 2099 | $5,000,000 | |
| GM 3803 | 2099 | $5,000,000 | |
| GM 3804 | 2099 | $5,000,000 | |
| GM 3806 | 2099 | $5,000,000 | |
| GM 3809 | 2099 | $5,000,000 | |
| GM 3810 | 2099 | $5,000,000 | |
| GM 3812 | 2099 | $5,000,000 | |
| GM 3000 | 1754 | $5,000,000 | |
| GM 3002 | 1754 | $5,000,000 | |
| GM 3003 | 1754 | $5,000,000 | |
| GM 3005 | 1754 | $5,000,000 | |
| GM 3006 | 1598 | $5,000,000 | |
| GM 3007 | 1633 | $5,000,000 | |
| GM 3008 | 1598 | $5,000,000 | |
| GM 3009 | 1633 | $5,000,000 | |
| GM 3010 | 1598 | $5,000,000 | |
| GM 3011 | 1633 | $5,000,000 | |
| GM 3012 | 1598 | $5,000,000 | |
| GM 3013 | 1633 | $5,000,000 | |
| GM 3807 | 2099 | $5,000,000 | |
| GM 5000 | 1619 | $5,000,000 | |
| GM 5001 | 1619 | $5,000,000 | |
| GM 5002 | 1619 | $5,000,000 | |
| GM 5003 | 1619 | $5,000,000 | |
| GM 5004 | 1619 | $5,000,000 | |
| GM 5005 | 1619 | $5,000,000 | |
| GM 5006 | 1619 | $5,000,000 | |
| GM 5007 | 1619 | $5,000,000 | |
| GM 5008 | 1619 | $5,000,000 | |
| GM 5010 | 1619 | $5,000,000 | |
| GM 5012 | 1619 | $5,000,000 | |
| GM 5014 | 1619 | $5,000,000 | |
| GM 5016 | 1619 | $5,000,000 | |
| GM 5018 | 1619 | $5,000,000 | |
| GM 5020 | 1619 | $5,000,000 | |
| GM 5022 | 1619 | $5,000,000 | |
| GM 5024 | 1619 | $5,000,000 | |
| GM 5026 | 1619 | $5,000,000 | |
| GM 5028 | 1619 | $5,000,000 | |
| GM 5030 | 1619 | $5,000,000 | |
| GM 5032 | 1619 | $5,000,000 | |
| GM 5034 | 1619 | $5,000,000 | |
| GM 5036 | 1619 | $5,000,000 | |
| GM 5009 | 1619 | $5,000,000 | |

Continued

(OMNI 7 DCCV8073-110613/1307031100)

# WATER QUALITY INSURANCE SYNDICATE
## WORLDWIDE VESSEL POLICY FORM 2011
### VESSEL SCHEDULE

**ASSURED -**  GENESIS MARINE, LLC
GENESIS CRUDE OIL, L.P.
GENESIS ENERGY, LLC
GENESIS ENERGY, L.P.
919 MILAM SUITE 2100
HOUSTON TX    77002

**POLICY   No. -**  46-80019

**POLICY PERIOD -**   July 18, 2013     **TO**  July 18, 2014

| VESSEL TYPE VESSEL NAME | GROSS TONS | Limit | PREMIUM |
|---|---|---|---|
| GM 5011 | 1619 | $5,000,000 | |
| GM 5038 | 1619 | $5,000,000 | |
| GM 5040 | 1619 | $5,000,000 | |
| GM 5042 | 1619 | $5,000,000 | |
| GM 5044 | 1619 | $5,000,000 | |
| GM 5048 | 1619 | $5,000,000 | |
| TUGBOAT / DOUBLE HULL / SELF PROPELLED | | | |
| MISS ALLIE | 328 | $5,000,000 | |
| TUGBOAT / SINGLE HULL / SELF PROPELLED | | | |
| GINGER GRIFFIN | 317 | $5,000,000 | |
| GAYLON ANN GRIFFIN | 338 | $5,000,000 | |
| SUSANNAH GRIFFIN | 546 | $5,000,000 | |
| NATALIE ALEXANDER | 298 | $5,000,000 | |
| MYRTLE E. GRIFFIN | 289 | $5,000,000 | |
| LILLIAN SIMONE GRI | 197 | $5,000,000 | |
| CAPT. GEORGE BRUML | 218 | $5,000,000 | |
| CLAY GRIFFIN | 494 | $5,000,000 | |
| CAPT. DAN PRICE | 260 | $5,000,000 | |
| JAMES DAVISON | 260 | $5,000,000 | |
| DAVE ANDERSON | 260 | $5,000,000 | |
| PATRICIA ANNE | 260 | $5,000,000 | |
| RENEE DAVISON | 260 | $5,000,000 | |
| DIANNE CHANDLER | 260 | $5,000,000 | |
| FRANK JAHN | 260 | $5,000,000 | |
| SID MOLLER | 260 | $5,000,000 | |
| KAREN PAPE | 260 | $5,000,000 | |
| CAPT. MARVIN REED | 260 | $5,000,000 | |
| CAPT. KIRK COLETTI | 218 | $5,000,000 | |
| BOB DEERE | 218 | $5,000,000 | |
| RED RIVER EXPRESS | 218 | $5,000,000 | |
| SANDRA BRUMLEY | 370 | $5,000,000 | |
| | | Total: | $ |

(OMNI 7 DCCV8073-110613/1307031100)

Water Quality Insurance Syndicate

Worldwide Vessel Pollution Policy Form 2011

PART I - INSURING PROVISIONS

In consideration of the premium set forth on the Declarations Page of the **Policy,** and subject to the TERMS, CONDITIONS, LIMIT OF LIABILITY, WARRANTIES, EXCLUSIONS, ENDORSEMENTS and DEFINITIONS (as contained in PART V and shown in **bold type** face herein) of this **Policy,** the Subscribers to the WATER QUALITY INSURANCE SYNDICATE hereafter ("WQIS"), as shown on the Signature Page hereof, do hereby agree to:

indemnify the **Assured** with respect to an **Occurrence** for such amounts as the **Assured** shall have become liable to pay and shall have paid for pollution response or damages, solely in its capacity as **Owner** and/or **Operator** of the **Vessel(s)** named on the Vessel Schedule;

and

reimburse the **Assured** with respect to an **Occurrence** for certain other costs and expenses, as described below, which the **Assured** shall have incurred in its capacity as **Owner** and/or **Operator** of the **Vessel(s)** ) named on the Vessel Schedule by reason of or with respect to SECTIONS A through H of PART I of the **Policy** under the following coverages:

*SECTION A*

*Discharges, Releases or the Substantial Threat of a Discharge or Release*

(1) *Oil Pollution Act of 1990 (33 U.S.C. Sec. 2701 - 2762), hereafter "*OPA*".* Liability to the **United States** or to any **Claimant** imposed under Subchapter I of OPA and costs and expenses incurred by the **Assured** for **Removal** and damages under the OPA for which liability would have been imposed under Subchapter I, had the **Assured** not incurred such liability voluntarily.

(2) *Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. Sec. 9601 – 9675), hereafter* 'CERCLA, " Liability to the **United States** or to any **Claimant** imposed under Section 9607(a)(1) of CERCLA and costs and damages incurred by the **Assured** for **Removal, Response** or **Remedial Action** for which liability would have been imposed under Section 9607(a)(1) of CERCLA had the **Assured** not undertaken such **Removal, Response** or **Remedial Action** voluntarily and liability arising from the sudden, accidental discharge, spillage, release, leakage or emission of a **Hazardous Substance** into or upon **Navigable Waters** or adjoining shorelines for any of the following damages:

   (a) Injury to, or economic losses resulting from destruction of or damage to real property, personal property or **Natural Resources;**
   (b) Loss of subsistence use of **Natural Resources** that have been injured, destroyed, or lost; and
   (c) Loss, damage, cost, liability or expense recoverable from the **Assured** by a third party to the same extent that the third party could have recovered had they been an **Assured** under this SECTION A (2) of PART I of the **Policy.**

LIABILITY IMPOSED UNDER ANY OTHER SECTION OR SUBSECTION OF CERCLA IS SPECIFICALLY EXCLUDED.

(3) *Spills of Other Substances* - Legal liability imposed on the **Assured** for any loss, damage, cost, liability or expense arising out of the sudden, accidental and unintentional discharge, spillage, leakage, emission or release of any substance of any kind into or upon the **Navigable Waters,** the adjoining shorelines or the **Exclusive Economic Zone,** where such liabilities are neither included nor excluded under any other provision of this **Policy.** It is further understood and agreed that this SECTION A (3) of PART I is extended to indemnify the **Assured** for liability to any third party for loss, damage, cost, liability or expense which would have been recoverable by such third party under this SECTION A (3) had the third party been an **Assured** under this **Policy;**

(4) *Other Federal Law* - Liability for costs and expenses otherwise recoverable pursuant to the provisions of the OPA or CERCLA, and which would otherwise be covered under SECTION A (1) or (2) of PART I, but which arise or are asserted under other federal law.

Liability imposed under such other federal law that is broader in scope than the **LIABILITY IMPOSED UNDER SECTION A OF PART I IS SPECIFICALLY EXCLUDED;**

(5) *Other State Law* - Liability for costs and expenses otherwise recoverable pursuant to the provisions of the OPA or CERCLA, and which would otherwise be covered under SECTION A (1) or (2) of PART I, but which arise or are asserted under the laws of any **State** or subdivision thereof. This coverage is also extended to cover such liability under the laws of any **State** or subdivision thereof which are more extensive in quantum than the liability which would have been imposed on the **Assured** by Section 2704 of OPA or Section 9607(c)(1) of CERCLA, subject always to the limitation of liability contained in PART II and of this **Policy;**

© 1992-2011 Wall Street Marine, Inc.
Rev. 6/1/2011

**WQIS**

(6) *International Law* - This **Policy** shall also indemnify the **Assured** for liability for costs and expenses incurred by the **Assured** for **Removal, Response** or **Remedial Action** for the release or threat of a release of **Hazardous Substances** or the discharge or threat of a discharge of **Oil** from a **Vessel(s)** arising from legal liability imposed on the **Assured** under international convention and under the laws of any foreign nation.

LIABILITY IMPOSED UNDER SECTION A (6) OF PART I THAT IS BROADER IN SCOPE OR MORE EXTENSIVE IN KIND OR QUANTUM THAN THE LIABILITY IMPOSED UNDER SECTION A (1) OR (2) OF PART I IS SPECIFICALLY EXCLUDED;

(7) *Salvage, Cleaning, Offloading and Miscellaneous Liability-*

(a) Costs and expenses incurred by the **Assured** for firefighting, salvage or removal of wreck or debris of any **Vessel(s)** or cargo carried aboard any such **Vessel(s)**, to the extent that such actions were undertaken for the purpose of stopping a discharge or release, or mitigating or preventing a substantial threat of a discharge under OPA or a threatened release under CERCLA, subject always to SECTION A(4) of Part III;

(b) Costs and expenses incurred by the **Assured** for removal of **Oil** and/or **Hazardous Substances** from decks and other surfaces of the **Vessel(s)** that are exposed to the weather, arising from an **Occurrence**;

(c) Costs and expenses incurred by the **Assured** to offload or remove **Oil** or **Hazardous Substances** discovered by the **Assured** to have been loaded aboard a **Vessel** without the **Assured's** knowledge or consent, provided that the **Assured** shall have given WQIS immediate notice of the discovery of any such **Oil** or **Hazardous Substance** on board the **Vessel**, and shall have obtained WQIS' prior consent with respect to the cost of the offloading, removal or other steps taken to remove the **Oil** or **Hazardous Substance**. The foregoing shall include the reasonable cost and expense of disposing of the **Oil** or **Hazardous Substance**, provided the **Assured** shall have obtained WQIS' prior consent as to the cost and manner of disposal;

(d) In the event of an **Occurrence** covered under SECTION A (1) or (2) of PART I, and the **Assured** is required to offload **Oil** or **Hazardous Substances** carried aboard any **Vessel(s)** involved in the **Occurrence** and such requirement is at the order of the United States Coast Guard or designated Federal On-Scene-Coordinator, this **Policy** is extended to indemnify the **Assured** for costs and the expenses incurred by the **Assured** for actions taken with the prior consent of WQIS to offload any **Oil** or **Hazardous Substances** carried aboard the **Vessel(s)**;and It is also understood and agreed that, in the event of a claim covered hereunder, this **Policy** will indemnify the **Assured** for: (i) costs and expenses incurred by the **Assured** for actions taken with the prior consent of WQIS for the disposal of any contaminated **Oil** and/or **Hazardous Substances** offloaded from the **Vessel(s)**; and (ii) additional costs and expenses incurred by the **Assured** for the delivery of offloaded **Oil** or **Hazardous Substances** provided, however, that such costs and expenses are incurred with the prior consent of WQIS and would not have been incurred by the **Assured** had the offloading not been required; and

(e) It is further understood and agreed that this SECTION D (7) of PART I is extended to indemnify the **Assured** for liability to any third party for loss, damage, cost, liability or expense which would have been recoverable by such third party had the third party been an **Assured** under this **Policy**.

## *SECTION B*

### *Investigation and Defense*

Reasonable attorney's fees, investigation costs and defense expenses incurred by the **Assured** with the consent of WQIS to defend against any liabilities covered under PART I SECTIONS A and D through G of the **Policy**. WQIS shall have the right, but not the obligation, to name the attorneys who shall represent the **Assured** in the prosecution or defense of any litigation or negotiations between the **Assured** and third parties concerning any claim covered by this **Policy**. All indemnification under this SECTION B of PART I is subject to the limit of liability under PART II of the **Policy**.

## *SECTION C*

### *U.S. Fines and Penalties*

(1) Administrative penalties imposed under Section 1321(b)(6)(B) and civil penalties imposed under Section 1321(b)(7)(A) of the Federal Water Pollution Control Act (33 U.S.C. Sec. 1251 − 1387) (hereafter FWPCA") as amended by OPA. Provided, however, that coverage hereunder with respect to Section 1321(b)(6)(B) penalties shall be limited to those arising under Section 1321(b)(6)(A)(i) and coverage hereunder with respect to Section 1321(b)(7)(A) shall be limited to those arising under Section 1321(b)(3)(i) ONLY;

(2) Fines imposed under Section 411 of the Rivers and Harbors Appropriations Act of 1899 33 U.S.C. 401 − 418), hereafter the "Refuse Act," arising under Section 407 of the Refuse Act as a direct result of the actual, release or discharge of **Oil** or **Hazardous Substances** from a **Vessel**;

© 1992-2011 Wall Street Marine, Inc.
Rev. 6/1/2011



(OMNI 7 DCCV8074 2-110609/1307031100)

109     (3) Fines imposed under Section 707(a) of the Migratory Bird Treaty Act ( 16 USC Sec. 703 - 712), hereafter
110     the "MBTA," due to the death of any Migratory Bird(s) protected under the MBTA, killed as a direct result
111     of the actual release or discharge of **Oil** or **Hazardous Substances** from a **Vessel**;

112     (4) Penalties imposed under Section 1319(c)(1)(A) of the FWPCA as amended by OPA, and arising under
113     Section 1321(b)(3)(i) of the FWPCA as a direct result of the actual release or discharge of **Oil** or
114     **Hazardous Substances** from a **Vessel.**

115     (5) Vessel General Permit –

116     (a) Penalties under 33 U.S.C. Sec.1319(c)(1)(A), 33 U.S.C Sec. 1319 (d) or 33 U.S.C 1319 (g)(1) and (2)
117     of the Clean Water Act (hereinafter CWA) arising from violation of 33 U.S.C. Sec. 1311(a) for discharges
118     incidental to the normal operation of a **Vessel** or other violations of the **Vessel General Permit**
119     requirements under the National Pollution Discharge Elimination System under 33 U.S.C. 1342; and

120     (b)   Reasonable costs incurred with the prior consent of WQIS for a corrective action other than
121     corrective action taken to replace or repair any part or equipment hereunder that was insured under the
122     vessel's hull and machinery policy taken for violations **Vessel General Permit** arising under 33 U.S.C.
123     1311(a) for compliance under U.S.C. 1319 (a) (1) of the CWA.

124     In addition, costs and expenses incurred by the **Assured** with the consent of WQIS for investigation of, or
125 defense against, any liabilities which are covered under this SECTION C of PART I.

126     *SECTION D*

127     *Additional Public Relations*

128     80% of each approved cost or expense incurred by the **Assured** with the prior consent of WQIS that are not
129 indemnified under SECTION A & B of PART I as **Removal** costs, for public relations during the **Removal** phase of an
130 **Occurrence arising out of the sudden, accidental and unintentional discharge, spillage, leakage, emission or**
131 **release of Oil or Hazardous Substances into or upon the Navigable Waters, the adjoining shorelines or the**
132 **Exclusive Economic Zone.** It is further understood and agreed that this SECTION D of PART I is extended to indemnify the
133 **Assured** for liability to a third party for public relation expense which would have been recoverable by such a third party, had
134 the third party been an **Assured** under SECTION D of PART I of this **Policy.**

135     *SECTION E*

136     *Automatic Acquisition Clause*

137     This **Policy** shall also indemnify the **Assured** to cover additional vessel(s) automatically for a period of 30 days where
138 the **Assured** becomes the **Owner** and/or **Operator** through purchase, charter, or lease; provided always that the **Assured**
139 agrees to notify WQIS of the acquisition of such vessel(s) as soon as practicable, and to pay pro-rata additional premium from
140 the date and time of attachment of the risk to the expiration date and time of this **Policy**. NO VESSEL SHALL AUTOMATICALLY
141 ATTACH UNDER THIS SECTION E OF PART I THAT EXCEEDS 300 GROSS TONS.

142     *SECTION F*

143     *Mitigation*

144     This **Policy** shall reimburse the **Assured** for the actual costs and expenses incurred and paid by the **Assured** for
145 actions taken with the prior consent of WQIS to avoid or mitigate the liabilities insured under SECTIONS A and D through G of
146 Part I of the **Policy**. However, in the event that the **Assured** acts for the purpose of stopping or preventing a substantial threat
147 of a discharge under OPA, a discharge under OPA, a threatened release under CERCLA or a release under CERCLA, in an
148 emergency situation, the prior consent reqirement shall be waived, subject always to immediate notice to WQIS as soon as the
149 **Assured** becomes aware of the **Occurrence.**

150     *SECTION G*

151     *Property Damage Ashore*

152     Liability to a third party for physical damage to real or personal property stored or located ashore arising from the
153 sudden and accidental discharge, spillage, release, leakage or emission of **Oil** or a **Hazardous Substance** into the atmosphere
154 from a **Vessel**. DAMAGE TO CARGO STORED OR LOCATED ASHORE IS SPECIFICALLY <u>EXCLUDED</u>.

© 1992-2011 Wall Street Marine, Inc.
Rev. 6/1/2011



(OMNI 7 DCCV8074 3-110609/1307031100)

*SECTION H*

*U.S. Criminal Defense*

Reasonable costs and expenses incurred by the **Assured** with the prior written consent of WQIS for the investigation of, or defense against, criminal investigation and/or charges against the **Assured** and/or **Assured's** employees under **United States and State** law arising from the actual discharge of **Oil** or **Release** of **Hazardous Substances** into or upon the **Navigable Waters** or adjoining shoreline from a **Vessel** on the Vessel Schedule. Notwithstanding the prior consent requirement, WQIS will reimburse the **Assured** for up to a maximum of $5,000 per **Occurrence** where the **Assured** is unable to obtain the prior consent of WQIS, subject always, to immediate notice to WQIS., COVERAGE HEREUNDER OF AN **ASSURED'S** EMPLOYEE(S) SHALL BE SUBJECT TO THE SAME TERMS, CONDITIONS, LIMIT OF LIABILITY, WARRANTIES, EXCLUSIONS, ENDORSEMENTS AND DEFINITIONS AS WOULD BE APPLICABLE IF THE **ASSURED'S** EMPLOYEE(S) WERE AN **ASSURED** UNDER THE **POLICY**.

## PART II – LIMIT OF LIABILITY

The MAXIMUM AMOUNT PAYABLE UNDER THIS **POLICY** for each liable **Vessel** in respect of each **Occurrence** for all the combined coverage under PART I of the **Policy** shall not exceed the limit of liability shown on the Vessel Schedule.

NOTWITHSTANDING THE FOREGOING the following limits shall be applicable to each of the individual SECTIONS as shown and such amounts shall NOT be in addition to the maximum amount otherwise payable under this Policy:

    (1) LIMIT OF LIABILITY APPLICABLE TO SECTION C of PART I: The maximum amount payable under SECTION C of PART I shall be $ 250,000 per **Occurrence** and in the annual aggregate.

    (2) THE LIMIT OF LIABILITY APPLICABLE TO SECTION H of PART I: The maximum amount payable for both the **Assured** and the **Assured's** employee(s) under SECTION H of PART I shall be $50,000 per **Occurrence** and in the annual aggregate.

Notwithstanding anything to the contrary in this **Policy**, it is specifically understood and agreed that WQIS at its sole option may withhold payment of any amounts claimed by the **Assured** under PART I until WQIS, at its absolute and sole discretion, is satisfied and believes that all of its known or potential liability under any evidence of insurance filed on behalf of the **Assured** pursuant to the financial responsibility requirements under OPA, CERCLA or otherwise and any applicable regulations thereunder have been satisfied. Provided further, however, that the amount withheld by WQIS may not exceed the amount of liability covered under such evidence of insurance issued in connection with any **Vessel(s)** involved in any **Occurrence** for which liability under this **Policy** is claimed, less any amounts actually paid by WQIS pursuant to such guarantee and application of a deductible, if any, hereunder.

## PART III - POLICY EXCLUSIONS

*SECTION A*
*General Exclusions*

Notwithstanding any language in this **Policy** to the contrary, this **Policy** does not cover any loss caused directly, indirectly or resulting from any of the following exclusions. Any such loss is excluded regardless of any other cause or event contributing concurrently or in sequence to the loss. There is no coverage for:

    (1) Loss of life, bodily injury, mental anguish or any other emotional, physical or mental illness;

    (2) Fines, penalties and punitive or exemplary damages of any kind or nature, however, the exclusion of fines and penalties shall not apply to indemnity specifically provided under SECTION C of PART I;

    (3) The discharge, emission, release, spillage or leakage of any radioactive material or substance of any kind or nature or the threat of such discharge, emission, release, spillage or leakage;

    (4) Firefighting, salvage or removal of wreck or debris of any **Vessel**(s) or cargo carried aboard any such **Vessel**(s), however, this exclusion shall not apply to indemnity provided under SECTION A(7) of PART I;

    (5) Contractual obligations which would not have been imposed on the **Assured** by law;

    (6) The willful misconduct, including but not limited to the gross negligence, of the **Assured**, or the willful misconduct of the **Owner** or **Operator** of the **Vessel**(s) if within the privity or knowledge of the **Assured**;

    (7) Liability arising from any intentional act of omission and/or commission committed with the privity and knowledge of the **Assured** where the **Assured** knew or should have known that such acts could result in a claim under this **Policy**;

    (8) An act of war;

© 1992-2011 Wall Street Marine, Inc.
Rev. 6/1/2011



(OMNI 7 DCCV8074 4-110609/1307031100)

(9) Damage to or loss of any cargo:(i) carried on board a **Vessel**(s) or any other vessel; (ii) within any pipeline; or (iii) stored on a temporary or permanent basis ashore or at any floating or stationary facility, however, this exclusion does not apply to liability recoverable by a **discharge** under Section 2702(b)(2)(B) of OPA;

(10) The **Discharge** of **Oil** or the **Release** of a **Hazardous Substance** or the substantial threat of such **Discharge** or **Release** from a vessel not on the Vessel Schedule, or from a structure, a fixed object or a floating object while such vessel, structure or object is being salvaged by the Assured under a salvage contract or agreement;

(11) Any liability which is uninsurable because the insurance of such liability (i) is against the public policy of, or (ii) otherwise prohibited by, the laws or regulations of the **United States**, any **State** or any political subdivision thereof, international law or the laws of any foreign nation;

(12) The cost of removing (which includes, but is not limited to, off-loading, gas freeing, tank cleaning or any other cleaning) from any **Vessel**(s) any substance of any kind, including, but not limited to, fuel, **Oil**, **Hazardous Substance**, cargo or product, where such removal would have been necessary in any event for the purpose of any repairs to or work on the **Vessel**(s);

(13) Loss, damage, cost, liability or expense arising from a discharge, spillage, release, leakage or emission of any substance of any kind from any property including but not limited to any structure, building, plant or premises owned, operated, leased or under the care, custody or control of the **Assured** other than from any **Vessel**(s) otherwise covered under this **Policy**;

(14) The introduction into US waters of aquatic invasive species as defined in and or in violation of any provisions of the Nonindigenous Aquatic Nuisance Prevention and Control Act (16 U.S.C. 4701 − 4751);

(15) The forfeiture and/or seizure of a **Vessel**(s) by any government entity or otherwise;

(16) Liability of any **Assured** arising from the **Assured** being treated as a **Responsible Party** for a facility, as lessee or Outer Continental Shelf Facility as such terms are defined in Section 2701 (9), (16) and (25) of OPA;

(17) (a) Whenever coverage provided by this **Policy** would be in violation of any **United States** economic or trade sanctions such as, but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Asset Control, such coverage shall be <u>NULL AND VOID</u>.

(b) Any coverage relating to or referred to in any certificate or other evidence of insurance issued by any person in violation of U.S. economic or trade sanctions referred to above, shall be <u>NULL AND VOID</u>;

(c) Any claim for loss, damage, cost, liability or expense that would otherwise be recoverable under this Policy for which payment would be in violation of U.S. economic or trade sanctions referred to above, shall be <u>NULL AND VOID</u> ;

(18) Penalties arising from Section 2716a (financial responsibility) of OPA; and

(19) Any provisions of CERCLA except as specifically provided for in PART I of the **Policy**.

SECTION B

*Prior Consent*

Except as provided for in SECTIONS F and H of PART I, this **Policy** does not provide indemnity for any cost or expense incurred by the **Assured** without the prior consent of WQIS.

SECTION C

*Out-of-Pocket Cost and Expense*

It is understood and agreed that this is a policy of indemnity and in order for an **Assured** to have a valid claim hereunder there must be an actual loss, cost, damage, liability or expense. Where the **Assured**, or any subsidiary, affiliated or related company or entity of the **Assured**, has responded to an **Occurrence** which gives rise to liability insured under this **Policy**, or has incurred costs or expenses that are claimed under this **Policy**, the amount payable to the **Assured** under this **Policy** shall be limited to the actual reasonable out-of-pocket costs and expenses incurred by the **Assured**. No amount shall be payable under this **Policy** for profit, mark-ups, nor for any portion of costs or expenses claimed that would have been incurred by the **Assured** or its subsidiary, affiliated or related company or entity had there been no **Occurrence**.

© 1992-2011 Wall Street Marine, Inc.
Rev. <u>6/1</u>/2011



247       SECTION D

248       *Vessel General Permit Exclusions*

249       Notwithstanding any provision in this **Policy** to the contrary, this **Policy** also does not provide indemnity for any
250   liability, loss, damage, cost or expense with respect to SECTION C (5) of PART I arising from:

251       (1)   Liability imposed under any other federal, state or local law not provided for in SECTION A of Part I of the **Policy**;

252       (2)   Knowing violations or false statements by the **Assured**;

253       (3)   Failure to file a Notice of Intent to discharge under a **Vessel General Permit** as required by the National Pollutant
254           Discharge Elimination System (33 U.S.C. Sec. 1342);

255       (4)   Failure to establish a self-monitoring, inspection, record keeping or reporting program as required by the **Vessel**
256           **General Permit** or failure to conduct required inspections, keep required records or report violations under the
257           **Vessel General Permit**. Notwithstanding the foregoing, any violations of these requirements that do not arise within
258           the privity and knowledge of the **Assured** shall not be excluded hereunder;

259       (5)   Failure to comply with education and training requirements as required under the **Vessel General Permit**; and

260       (6)   Corrective actions arising from wear, tear, gradual deterioration, latent defect and error in design or construction.

261       PART IV - GENERAL TERMS, CONDITIONS AND LIMITATIONS

262       *SECTION A*

263       *General Warranties*

264       (1)   The **Assured's** breach of any warranty, express or implied, contained in this **Policy** whether prior to, during or after an
265           **Occurrence** shall immediately void this **Policy** as of the time of the breach, and no claim shall be paid under this
266           **Policy** for losses arising after the breach. WQIS may, at its sole discretion, continue to indemnify the **Assured** provided
267           that: (i) it has received written notice of the breach from the **Assured**; (ii) the **Assured** has paid any additional
268           premium as WQIS may require; and (iii) WQIS has confirmed in writing that coverage is continued.

269       (2)   The **Assured** warrants that:

270           (a)   No **Vessel(s)** shall carry a cargo or cargo residue of **Hazardous Substance** or **Oil** during the term of this
271               **Policy** unless declared to WQIS and any amended terms are agreed and addition premiums, if any, are paid;

272           (b)   Unless the **Vessel(s)** is declared as a **Tank Vessel**, and premium is calculated and paid accordingly, the
273               **Vessel(s)** shall not at any time during the term of this **Policy** be operated or used as a **Tank Vessel;**

274           (c)   The **Assured** shall at all times use due diligence to maintain each of the **Vessel(s)** in a seaworthy condition;

275           (d)   The **Assured** shall give notice to WQIS in the event that the **Vessel(s)** changes its flag or country of registry;
276               and

277           (e)   As **Owner and/or Operator** of a **Vessel(s)**, be in compliance with the provisions of Chapter IX of the
278               International Convention for the Safety of Life at Sea (SOLAS) 1974 (hereinafter ISM Code), if required by the
279               **Vessel's** flag state.

280       *SECTION B*

281       *Applicable Law and Venue*

282       (1)   This **Policy** is deemed to have been issued to the **Assured** in New York, New York, and the law applicable to the
283           interpretation of this **Policy** of insurance and the rights and obligations of WQIS and the **Assured** hereunder shall be
284           federal maritime law of the **United States** or, in the absence of federal maritime law of the **United States**, the law
285           of the State of New York, without regard for New York's choice of law rules.

286       (2)   Should there be any dispute arising out of or in any way concerning this **Policy** or the coverage provided by WQIS to
287           the **Assured(s)** hereunder, which results in any lawsuit or other legal action against WQIS by the **Assured(s)**, such
288           lawsuit or legal action shall be brought by the **Assured(s)** in the United States District Court for the Southern District
289           of New York, and WQIS consents to the jurisdiction of that Court for all such lawsuits or legal actions.
290           Notwithstanding the foregoing, any lawsuit or legal action brought by WQIS against any **Assured** with respect to
291           disputes concerning or arising from this **Policy**, whether on account of premium owed or otherwise, may be brought
292           by WQIS in any Court of competent jurisdiction in the **United States**.

© 1992-2011 Wall Street Marine, Inc.
Rev. 6/1/2011

WQIS

(OMNI 7 DCCV8074 6-110609/1307031100)

*SECTION C*

**Assured's** *Post Occurrence Duties*

(1) IN THE EVENT OF ANY **OCCURRENCE** OR INCIDENT WHICH MAY GIVE RISE TO A CLAIM UNDER THIS **POLICY**, IT IS WARRANTED THAT THE **ASSURED** SHALL GIVE IMMEDIATE NOTICE TO WQIS OF SAID **OCCURRENCE** OR INCIDENT BY TELEPHONE. NOTICE BY EMAIL AND/OR FACSIMILE AND/OR OTHER ELECTRONIC MEANS SHALL NOT CONSTITUTE IMMEDIATE NOTICE.

(2) It is warranted that the **Assured** shall cooperate with WQIS and the **Assured** shall immediately forward to WQIS all information, communications, surveys, reports, processes, pleadings or legal papers relating to any **Occurrence** and shall make available and secure all vessels, premises and facilities for inspection by WQIS. When required by WQIS, the **Assured** shall: (i) aid in securing information, evidence and the cooperation of witnesses; and shall (ii) cooperate with WQIS, including testifying at the request of WQIS, in any claim or suit, subrogation, preparation of a claim to the National Pollution Funds Center and in the appeal from any judgment.

(3) If, at the time of an **Occurrence** otherwise giving rise to liability insured by this **Policy**, there is any other valid and collectible insurance with any other insurer covering the **Occurrence**, the insurance afforded by this **Policy** (including any investigation and defense obligation) shall be in excess of and shall not contribute with such other insurance, regardless of whether any such other insurance policy contains an "other insurance" or similar clause or is stated to be contributory, excess, contingent or otherwise. The **Assured** shall make all possible efforts to collect from such other insurance.

(4) The Assured shall obtain the prior written consent of WQIS prior to the settlement of any loss hereunder.

(5) If the **Assured** shall fail or refuse to settle any claim as authorized or requested by WQIS, the liability of WQIS to the **Assured** shall be limited to the amount for which settlement could have been made, or, if the amount is unknown, to that amount which WQIS authorized.

(6) WQIS shall be subrogated to all the rights which the **Assured** may have against any other person, entity or fund, in respect of any payment made under this **Policy**, to the extent of such payment, and the **Assured** shall, upon the request of WQIS, execute all documents necessary to secure to WQIS such rights. In the event of any agreement or act, past or future, by the **Assured**, whereby any right of recovery of the **Assured** against any person, entity or fund is released or lost, to which WQIS on payment of loss would have been entitled, by subrogation, but for such agreement or act, WQIS shall be relieved of liability under this **Policy** to the extent that its rights of subrogation and any other right of recovery have been impaired thereby; in such event, the right of WQIS to retain or collect any premium paid or due hereunder shall not be affected. In the event that WQIS is required to respond under this **Policy**, WQIS shall have full rights of subrogation and recovery against the **Assured** to the extent that such liability was imposed on the **Assured**, in whole or in part, by any act (of omission or commission) in its capacity as owner or operator of any vessel, fixed or floating object, structure or facility not insured under this **Policy**.

(7) The **Assured** shall submit to an examination(s) under oath if requested at any time by WQIS and shall cooperate and provide all reasonable assistance in making available and securing, when requested by WQIS, the testimony of any officers, members of the crew or employees to answer questions under oath as often as requested.

(8) The **Assured** shall not make any admission of liability, either before or after any such **Occurrence** or incident, without the prior consent of WQIS; except that the **Assured** may, without the prior consent of WQIS, provide any reasonable cooperation and assistance requested by a responsible official pursuant to Section 2704(c)(2)(B) of OPA or Section 107(c)(2) of CERCLA.

<u>FAILURE TO COMPLY WITH ANY OF THESE PROVISIONS MAY RESULT IN COVERAGE BEING NULL AND VOID.</u>

*SECTION D*

*Cancellation*

(1) Either WQIS or the **Assured** may cancel this **Policy** or delete any **Vessel(s)**, for any reason, by giving the other party thirty (30) days' notice of such intention in writing and delivered by hand, facsimile transmission, overnight delivery service, mail or electronic means sent to (i) the **Assured** at its last known address or (ii) WQIS at 60 Broad Street, New York, N.Y. 10004. At noon on the thirtieth (30th) day after such notice shall have been sent, this insurance shall be null and void. Any such notice sent by WQIS to the **Assured's** broker of record for this insurance shall have the same effect as if sent to the **Assured** directly. If this **Policy** or any part hereof, is cancelled by WQIS, such proportion of the premium as shall have been earned up to the time of such cancellation shall be retained by WQIS and a return of premium shall be computed on a pro rata daily basis; if cancelled at the request of the **Assured**, the return shall be

© 1992-2011 Wall Street Marine, Inc.
Rev. 6/1/2011



(OMNI 7 DCCV8074 7-110609/1307031100)

349 based on short rates.  From any return of premium, the same percentage of deduction, if any, shall be made by WQIS
350 as was allowed by WQIS on receipt of the original premium.

351 (2) In the event of non-payment of premium within thirty (30) days after the due date(s) hereunder, this **Policy** may be
352 cancelled by WQIS upon ten (10) days' written notice delivered by hand, facsimile transmission, overnight delivery
353 service, mail or electronic means to the **Assured** at its last known address.  At noon on the tenth (10th) day after such
354 notice shall have been sent, this insurance shall be null and void.  Any such notice sent to the **Assured's** broker of
355 record for this insurance shall have the same effect as if sent to the **Assured** directly.  Such proportion of premium as
356 shall have been earned up to the time of cancellation shall be payable.

357 (3) Notwithstanding the foregoing, where WQIS has at the request of the **Assured** filed any evidence of insurance to
358 satisfy the requirements of the **United States** or any **State** or any political subdivision thereof or the laws of any
359 foreign nation on behalf of the **Assured** pursuant to the financial responsibility requirements under OPA, or CERCLA,
360 or otherwise, and any applicable regulations thereunder, such guarantee cancellation shall be effective, at WQIS'
361 option, either in accordance with SECTION D (1) or (2) of PART IV or on the effective date of the termination of
362 liability under such evidence of insurance.

363                                  *SECTION E*

364                              *Post Judgment Action*

365 No action shall lie against WQIS for the recovery of any liability, loss, damage, cost or expense sustained by the
366 **Assured** unless such action is brought against WQIS within one (1) year after a final judgment or decree is entered against the
367 **Assured**, or in case the claim against WQIS accrues without the entry of such final judgment or decree, unless such action is
368 brought within one (1) year from the date of the payment of such liability, loss, damage, cost or expense by the **Assured**.

369                                  *SECTION F*

370                      *Insolvency, Reorganization and Seizure*

371 (1) In the event that the **Assured** becomes insolvent, files an action for reorganization or liquidation in any court, or is
372 granted protection from creditors by any court, immediate written notice shall be given to WQIS.

373 (2) The **Assured** shall also give immediate notice to WQIS in the event that any **Vessel(s)** is the subject of any action or
374 legal proceeding seeking to arrest, seize or attach the **Vessel(s)** for any reason.

375                                  *SECTION G*

376                        *Indemnification and Hold Harmless*

377 If WQIS issues any evidence of insurance provided to the **United States** or any **State** or any political subdivision
378 thereof or the laws of any foreign nation on behalf of the **Assured** pursuant to the financial responsibility requirements under
379 OPA, or CERCLA, or otherwise, and any applicable regulations thereunder, such guarantee shall be immediately cancelled and of
380 no further force or effect upon cancellation of this **Policy**.  If WQIS is required to pay any claim under such guarantee on
381 behalf of the **Assured** for an **Occurrence** arising after this **Policy** has been cancelled or otherwise terminated, then the
382 **Assured** agrees to, and shall, indemnify and hold harmless WQIS from all loss, damage, cost, liability or expense paid pursuant
383 to such guarantee.

384                                  *SECTION H*

385                              ***Policy*** *Renewal*

386 If this **Policy** is a renewal of a prior WQIS policy, it shall be considered a separate policy of insurance, and not a
387 continuation of the prior policy.

388                                  *SECTION I*

389                              *Entire Agreement*

390 (1) This **Policy** constitutes the entire agreement between WQIS and the **Assured**, and it may only be modified, amended
391 or changed in writing by WQIS. The **Assured** also acknowledges that the Broker of Record is solely the agent of the
392 **Assured** with respect to this **Policy**, and is not the agent, express or implied, of WQIS.

393 (2) The **Assured** expressly acknowledges acceptance of the provisions of this **Policy**, unless the **Policy** has been
394 endorsed by WQIS at the request of the **Assured** to waive or modify this **Policy**, for which additional premium may
395 be required.

© 1992-2011 Wall Street Marine, Inc.
Rev. 6/1/2011

396                                  *SECTION J*

397                            *Headings, Captions and Labels*

398         The headings, captions and labels in this **Policy** are there for the purpose of organization and are not to be used in
399   interpreting the terms, conditions, limit of liability, warranties, exclusions, endorsements and definitions of this **Policy**.

400                              PART V - DEFINITIONS

401   (1)   The following words shall have the meaning as defined in Section 2701 of OPA:
402              (a)   **Claimant**
403              (b)   **Discharge**
404              (c)   **Exclusive Economic Zone**
405              (d)   **Gross Ton**
406              (e)   **Navigable Waters**
407              (f)   **Natural Resources**
408              (g)   **Owner or Operator**
409              (h)   **Public Vessel**
410              (i)   **Responsible Party**
411              (j)   **Tank Vessel**
412              (k)   **United States and State**

413   (2)   The following words shall have the meaning as defined in Section 9601 of CERCLA:
414              (a)   **Hazardous Substance**
415              (b)   **Release**
416              (c)   **Remedial Action**
417              (d)   **Response**

418   (3)   **Assured** means the **Assured(s)** listed on the Declarations Page and any other entity added by endorsement in their
419         capacity as an **Owner** and/or **Operator** of a **Vessel** named on the Vessel Schedule.

420   (4)   **Oil** has the meaning as defined in Section 2701 of OPA as amended by of stopping a discharge or release, or
421         mitigating or preventing a substantial threat of a discharge under OPA or a threatened release under CERCLA.

422   (5)   **Occurrence** means any one accident or series of accidents arising out of one event which gives rise or may give rise
423         to loss, damage, cost, liability or expense claimed under this **Policy** including an insured violation of the **Vessel
424         General Permit**, where the **Occurrence** commences on or after the Inception Date and Time and on or before the
425         Expiration Date and Time shown on the Declarations Page.

426   (6)   **Removal** shall have the meaning for the purposes of this **Policy** as defined in Section 1001(30) of OPA except that
427         for the purposes of SECTION B of PART I it shall have the meaning as defined in Section 9601(23) of CERCLA.

428   (7)   **Vessel** shall have the meaning as defined in Section 2701(37) of OPA when such **Vessel** is named on the Vessel
429         Schedule and/or in accordance with SECTION E of PART I. This **Policy** shall also indemnify the **Assured** as **Owner**
430         and/or **Operator** of a **Public Vessel** named on the Vessel Schedule for liabilities that would have been insured
431         against under SECTION A (1) of PART I but for the fact that such liabilities are excluded under Section 2702(c) (2) of
432         OPA.

433   (8)   **Vessel General Permit** means obtaining authority for discharges incidental to normal operations under CWA Section
434         402 National Pollution Discharge Elimination System (33 U.S.C. 1342) and the Environmental Protection Agency's
435         implementing regulations.

436   (9)   The **Policy** shall consist of:

437              a.   The Declarations Page;
438              b.   WQIS Policy Form 2011;
439              c.   The Vessel Schedule;
440              d.   The Signature Page; and
441              e.   Any Endorsements issued by WQIS.

© 1992-2011 Wall Street Marine, Inc.
Rev. 6/1/2011



| Subscribers | Proportion | 46 |
|---|---|---|

| | | |
|---|---|---|
| Alterra America Insurance Company, Wilmington, Delaware | 2.3000 | |
| American Alternative Insurance Corporation, Wilmington, Delaware | 4.9794 | |
| Atlantic Specialty Insurance Company, New York, NY | 8.3716 | |
| Insurance Company of North America, Philadelphia, Pennsylvania | 8.3716 | |
| Liberty Insurance Underwriters, Inc., New York, New York | 8.3716 | |
| National Union Fire Ins. Company of Pittsburgh, PA., Pittsburgh, PA. | 8.3716 | |
| Navigators Insurance Company, New York, New York | 8.3716 | |
| New York Marine and General Insurance Company, New York, New York | 8.3716 | 100th of Sum Insured |
| North American Specialty Insurance Company, Manchester, New Hampshire | 8.3716 | |
| RLI Insurance Company, Peoria, Illinois | 3.8205 | |
| StarNet Insurance Company, Wilmington, DE. | 1.0000 | |
| The Continental Insurance Company, Reading, PA. | 7.9557 | |
| Travelers Property Casualty Company of America, Hartford, CT | 8.3716 | |
| U.S. Fire Insurance Company, Wilmington, Delaware | 2.3000 | |
| XL Specialty Insurance Company, Wilmington, Delaware | 2.3000 | |
| Zurich American Insurance Company, Schaumburg, Illinois | 8.3716 | |

Total  <u>100.00000</u>

Provisions required by law to be stated in this Policy:

*IN WITNESS WHEREOF,* the *SUBSCRIBERS* listed above, each severally, but not jointly, and not on the part of one for the other or any of the others, have caused this Policy to be signed by their Attorney at New York, N.Y., but this Policy shall not be valid unless countersigned by a duly authorized Agent of each of the Subscribers.

Countersigned in New York, N.Y.
July 18, 2013

Executed in New York, N.Y.

_____

*Attorney for the Individual Subscribers to*
**WATER QUALITY INSURANCE SYNDICATE**

_____

*Agent for the Individual Subscribers to*
**WATER QUALITY INSURANCE SYNDICATE**

*11/12*

(OMNI 7 EFQA46 1-130311/1307031100)

SCHEDULE OF FORMS AND ENDORSEMENTS

Attached to Policy number: <u>46-80019</u>                    Date:   <u>7-18-13</u>

<u>FORM NUMBERS</u>                     <u>FORM TITLES</u>

APP 46                          APP 46

## TERRORISM INSURANCE COVERAGE and
## U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE

### POLICY HOLDERS DISCLOSURE – NOTICE OF TERRORISM INSURANCE COVERAGE

It is hereby understood and agreed that, with effect to all policies attaching, in force or renewing on or after November 26, 2002, the **Policy** is amended as follows:

Coverage for acts of terrorism is not excluded in your current **Policy**. Effective November 26, 2002, under your existing coverage, any losses caused by certified acts of terrorism would be partially reimbursed by the **United States** under a formula established by federal law.  Under this formula, the **United States** pays 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurer providing coverage.  The portion of your annual premium that is attributable to coverage for acts of terrorism is 0.50% of the annual gross premium for this **Policy**.

POLICY HOLDERS ARE HEREBY NOTIFIED THAT THE LIABILITY CAP UNDER SUBSECTION 103 (E) (2) OF THE TERRORISM RISK INSURANCE ACT OF 2002 IS $100 billion.

**THIS DISCLOSURE DOES NOT AMEND ANY TERMS, CONDITION, OR LIMITS UNDER THIS POLICY.**

### U.S.ECONOMIC AND TRADE SANCTIONS CLAUSE

Whenever coverage, indemnification, or reimbursement provided by this **Policy** would be in violation of any **United States** economic or trade sanctions such as, but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Asset Control, such coverage shall be **NULL AND VOID.**

Any coverage relating to or referred to in any certificate or other evidence of insurance issued by any person in violation of **United States** economic or trade sanctions referred to above shall be **NULL AND VOID.**

Any claim for loss, damage, cost, liability or expense that would otherwise be recoverable under this **Policy**, for which the payment would be in violation of **United States** economic or trade sanctions referred to above, shall be **NULL AND VOID.**

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

## ENDORSEMENT NO.1

**To be attached to and**

**form a part of Policy No.**      **46-80019**      *of the* **WATER QUALITY INSURANCE SYNDICATE**

Assured:   **GENESIS MARINE, LLC GENESIS CRUDE OIL, L.P.**
**GENESIS ENERGY, LLC GENESIS ENERGY, L.P.**

## DEFENSE, FINES AND PENALTIES
### (With State Civil Fines and Penalties)
#### January 18, 2012

For and in consideration of a premium in the amount charged herein, it is understood and agreed that effective from inception, Section C of PART I is deleted and replaced by the following:

Section C
*U. S. Fines and Penalties*

This **Article** provides coverage for certain specified fines, penalties, costs, and investigation and defense costs as follows:

(A) In the event of an **Occurrence** covered under Section A of PART I, this **Policy** will indemnify the **Assured** for:

(1) Administrative penalties imposed under Section 1321(b)(6)(B) and civil penalties imposed under Section 1321(b)(7)(A) of the Federal Water Pollution Control Act (33 U.S.C. Sec. 1251-1387) (hereafter "FWPCA") as amended by OPA.  Provided, however, that coverage hereunder with respect to Section 1321(b)(6)(B) penalties shall be limited to those arising under Section 1321(b)(6)(A)(i) and coverage hereunder with respect to Section 1321(b)(7)(A) shall be limited to those arising under Section 1321(b)(3)(i) ONLY.

(2) Fines imposed under Section 411 of the Rivers and Harbors Appropriations Act of 1899 (33 U.S.C. 401-418), hereafter the "Refuse Act," arising under Section 407 of the Refuse Act as a direct result of the actual **Release** or **Discharge of Oil** or **Hazardous Substances** from a **Vessel;**

(3) Fines imposed under Section 707(a) of the Migratory Bird Treaty Act (16 U.S.C. Sec. 703 – 712), hereafter the "MBTA," due to the death of any Migratory Bird(s) protected under the MBTA, killed as a direct result of the actual **Release** or **Discharge of Oil** or **Hazardous Substances** from a **Vessel;**

(4) Penalties imposed under Section 1319(c)(1)(A) of the FWPCA as amended by OPA, and arising under Section 1321(b)(3)(i) of the FWPCA as a direct result of the actual **Release** or **Discharge of Oil** or **Hazardous Substances** from a **Vessel.**

Copyright ©Wall Street Marine, Inc., 2012
Revised February 2012

(B) Vessel General Permit –

(1) Penalties under 33 U.S.C. Sec.1319(c)(1)(A), 33 U.S.C Sec. 1319 (d) or 33 U.S.C 1319 (g)(1) and (2) of the Clean Water Act (hereinafter "CWA") arising from violation of 33 U.S.C. Sec. 1311(a) for discharges incidental to the normal operation of a **Vessel** or other violations of the **Vessel General Permit** requirements under the National Pollution Discharge Elimination System under 33 U.S.C. 1342; and

(2) Reasonable costs incurred with the prior consent of WQIS for a corrective action other than corrective action taken to replace or repair any part or equipment hereunder that was insured under the **Vessel's** hull and machinery policy taken for violations **Vessel General Permit** arising under 33 U.S.C. 1311(a) for compliance under U.S.C. 1319 (a) (1) of the CWA.

(C) State Civil Fines and Penalties –
This **Policy** is also to cover civil fines and civil penalties imposed under the laws of any state or political subdivision thereof, which arise under **state** law as a result of an **Occurrence** under Section 1321(b)(6)(A)(i) of the FWPCA <u>ONLY.</u>
(D) Defense Costs –

Costs and expenses incurred by the **Assured** with the consent of WQIS for investigation of, or defense against, any liabilities which are covered under this SECTION C of PART I.

Notwithstanding the foregoing, the coverage provided by this endorsement is not applicable if (i) it is contrary to the law or public policy of the state where the **Release** or **Discharge** occurred, or the state law which determines the legal liability of the **Assured**, or (ii) the **Assured's** liability under this Endorsement arises out of any intentional misconduct by the **Assured** or by others acting with the privity and knowledge of the **Assured**.

It is further understood and agreed that the limit of liability in PART II of the **Policy** applicable to SECTION C of PART I of the **Policy** is deleted and replaced with the following:

The maximum amount payable under SECTION C of PART I, including investigation and defense costs, shall be $1,000,000, for each **Occurrence** and shall be subject to an annual aggregate during the term of this **Policy** in the amount of $1,000,000.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Countersigned in New York, N.Y.
On July 3, 2013

_____
Agent for the Individual Subscribers to
**WATER QUALITY INSURANCE SYNDICATE**

Copyright ©Wall Street Marine, Inc., 2012
Revised February 2012

# ENDORSEMENT NO.2

**To be attached to and**

**form a part of Policy No.**     **46-80019**     *of the* WATER QUALITY INSURANCE SYNDICATE

Assured:   GENESIS MARINE, LLC GENESIS CRUDE OIL, L.P.
                   GENESIS ENERGY, LLC GENESIS ENERGY, L.P.

## ADDITIONAL ASSURED / WAIVER OF SUBROGATION

In consideration of an additional premium charged herein, it is hereby understood and agreed that effective from inception:

(a) Where a **Vessel** insured hereunder is working, performing services for and/or has entered into a contractual agreement with an entity or person not insured hereunder, if the **Assured** agrees and it is required by the contract, the entity or person with whom the **Assured** is in contractual privity is hereby named as an additional **Assured** hereunder, but only to the extent required by the contract.

(b) While a **Vessel** insured hereunder is engaged in working, performing services for and/or has entered into a contractual agreement with any entity or person not insured hereunder, rights of subrogation are waived against said entity or person (and any subsidiary or affiliated companies); but this waiver of subrogation only applies to liabilities pursuant to the contract with said entity or person, and only to the extent required by the contract.

Notwithstanding the forgoing, it is understood and agreed that this endorsement shall only apply to contracts entered into before any **occurrence** hereunder.

In no event shall this endorsement amend SECTION A (5) of PART III.

Indemnification hereunder is limited to such amounts as the **Assured** shall have become liable to pay and shall have paid as **owner** or **operator** of a **Vessel** named on the Vessel Schedule.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Countersigned in New York, N.Y.
        On July 3, 2013

<br>

_____
            Agent for the Individual Subscribers to
        **WATER QUALITY INSURANCE SYNDICATE**

© Wall Street Marine, Inc.

# ENDORSEMENT NO.3

**To be attached to and**

**form a part of Policy No.**          **46-80019**          *of the* WATER QUALITY INSURANCE SYNDICATE

Assured:   GENESIS MARINE, LLC GENESIS GRUDE OIL, L.P.
            GENESIS ENERGY, LLC GENESIS ENERGY, L.P.

## ADDITIONAL NAMED ASSURED

It is hereby understood and agreed that effective from inception, the following is/are to be considered additional **Assured(s)** under this Policy:

**GENESIS MARINE, LLC, GEL MARINE, LLC, DG TRANSPORTATION, LLC GRIFCO TRANSPORTATION TWO LTD., DGMT HOLDINGS, LLC, DG JV, LLC, DG HOLDINGS, LLC, GENESIS MARINE INVESTMENTS, LLC, GENESIS CRUDE OIL, L.P., AS TO INTEREST IN GENESIS MARINE INVESTMENTS, LLC, TD MARINE, LLC, GENESIS ENERGY, L.P. AND GENESIS ENERGY, LLC**

Indemnification hereunder is limited to such amounts as the **Assured** shall have become liable to pay and shall have paid as **owner** or **operator** of a **Vessel** named on the Vessel Schedule.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Countersigned in New York, N.Y.
    On July 3, 2013

_____
Agent for the Individual Subscribers to
**WATER QUALITY INSURANCE SYNDICATE**

© Wall Street Marine, Inc.

## ENDORSEMENT NO.4

To be attached to and

form a part of Policy No.   **46-80019**          *of the* WATER QUALITY INSURANCE SYNDICATE

Assured:   GENESIS MARINE, LLC

## ADDITIONAL VESSEL

For and in consideration of an additional pro-rata premium of          it is hereby understood
and agreed that effective as shown, Insurance attaches on the following Vessel:

| VESSEL NAME | GT | EFFECTIVE DATE | LIMIT | ADDITIONAL PREMIUM |
|---|---|---|---|---|
| **GM 1000** | 1754 | 10/10/13 | $5,000,000 | |

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Countersigned in New York, N.Y.
On October 10, 2013

Agent for the Individual Subscribers to
**WATER QUALITY INSURANCE SYNDICATE**

© Wall Street Marine, Inc.

## ENDORSEMENT NO.5

To be attached to and

form a part of Policy No.   46-80019          *of the* WATER QUALITY INSURANCE SYNDICATE

Assured:   GENESIS MARINE, LLC

### ADDITIONAL VESSEL

For and in consideration of an additional pro-rata premium of          it is hereby understood
and agreed that effective as shown, Insurance attaches on the following Vessel:

| VESSEL NAME | GT | EFFECTIVE DATE | LIMIT | ADDITIONAL PREMIUM |
|---|---|---|---|---|
| GM 1001 | 1754 | 10/25/13 | $5,000,000 | |
| GM 1003 | 1754 | 10/25/13 | $5,000,000 | |

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Countersigned in New York, N.Y.
On October 24, 2013

Agent for the Individual Subscribers to
**WATER QUALITY INSURANCE SYNDICATE**

© Wall Street Marine, Inc.

# ENDORSEMENT NO.6

To be attached to and

form a part of Policy No.    46-80019          *of the* WATER QUALITY INSURANCE SYNDICATE

Assured:   GENESIS MARINE, LLC

## ADDITIONAL VESSEL

For and in consideration of an additional pro-rata premium of          it is hereby understood
and agreed that effective as shown, Insurance attaches on the following **Vessel**:

| VESSEL NAME | GT | EFFECTIVE DATE | LIMIT | ADDITIONAL PREMIUM |
|---|---|---|---|---|
| **GM 1002** | 1754 | 11/13/13 | $5,000,000 | |

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Countersigned in New York, N.Y.
On November 7, 2013

Agent for the Individual Subscribers to
**WATER QUALITY INSURANCE SYNDICATE**

# ENDORSEMENT NO.7

To be attached to and

form a part of Policy No.    46-80019            *of the* WATER QUALITY INSURANCE SYNDICATE

Assured:    GENESIS MARINE, LLC

## ADDITIONAL VESSEL

For and in consideration of an additional pro-rata premium of        it is hereby understood and agreed that effective as shown, Insurance attaches on the following Vessel:

| VESSEL NAME | GT | EFFECTIVE DATE | LIMIT | ADDITIONAL PREMIUM |
|---|---|---|---|---|
| FRANK W. BANTA | 168 | 12/17/13 | $5,000,000 | |

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Countersigned in New York, N.Y.
On December 18, 2013

_____

Agent for the Individual Subscribers to
WATER QUALITY INSURANCE SYNDICATE

# ENDORSEMENT NO.9

To be attached to and

form a part of Policy No.    46-80019          *of the* WATER QUALITY INSURANCE SYNDICATE

Assured:    GENESIS MARINE, LLC

## ADDITIONAL VESSEL

For and in consideration of an additional pro-rata premium of          , it is hereby understood and agreed that effective as shown, Insurance attaches on the following **Vessel**:

| VESSEL NAME | GT | EFFECTIVE DATE | LIMIT | ADDITIONAL PREMIUM |
|---|---|---|---|---|
| **GM 2001** | 1619 | 4/29/14 | $5,000,000 | |

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Countersigned in New York, N.Y.
   On April 29, 2014

_____
Agent for the Individual Subscribers to
**WATER QUALITY INSURANCE SYNDICATE**

© Wall Street Marine, Inc.

# ENDORSEMENT NO.10

**To be attached to and
form a part of Policy No.**    46-80019          *of the* WATER QUALITY INSURANCE SYNDICATE

Assured:   GENESIS MARINE, LLC

## ADDITIONAL VESSEL

For and in consideration of an additional pro-rata premium of          it is hereby understood and
agreed that effective as shown, Insurance attaches on the following **Vessel**:

| VESSEL NAME | GT | EFFECTIVE DATE | LIMIT | ADDITIONAL PREMIUM |
|---|---|---|---|---|
| **GM 1004** | 1754 | 5/2/14 | $5,000,000 | |

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

Countersigned in New York, N.Y.
On April 30, 2014

Agent for the Individual Subscribers to
**WATER QUALITY INSURANCE SYNDICATE**

© Wall Street Marine, Inc.

# ENDORSEMENT NO.11

**To be attached to and
form a part of Policy No.**   46-80019          *of the* WATER QUALITY INSURANCE SYNDICATE

**Assured:**   GENESIS MARINE, LLC

## ADDITIONAL VESSEL

For and in consideration of an additional pro-rata premium of          it is hereby understood and agreed that effective as shown, Insurance attaches on the following **Vessel**:

| VESSEL NAME | GT | EFFECTIVE DATE | LIMIT | ADDITIONAL PREMIUM |
|---|---|---|---|---|
| **GM 1005** | 1754 | 5/20/14 | $5,000,000 | |

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

Countersigned in New York, N.Y.
On May 22, 2014

Agent for the Individual Subscribers to
WATER QUALITY INSURANCE SYNDICATE

## ENDORSEMENT NO.12

**To be attached to and
form a part of Policy No.**   46-80019          *of the* WATER QUALITY INSURANCE SYNDICATE

Assured:   GENESIS MARINE, LLC

### ADDITIONAL VESSEL

For and in consideration of an additional pro-rata premium of          it is hereby understood and agreed that effective as shown, Insurance attaches on the following **Vessel**:

| VESSEL NAME | GT | EFFECTIVE DATE | LIMIT | ADDITIONAL PREMIUM |
|-------------|------|--------|-------------|--------|
| GM 1007 | 1754 | 6/3/14 | $5,000,000 | |
| GM 2000 | 1619 | 6/3/14 | $5,000,000 | |

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

Countersigned in New York, N.Y.
On June 3, 2014

Agent for the Individual Subscribers to
**WATER QUALITY INSURANCE SYNDICATE**

## ENDORSEMENT NO.13

To be attached to and

form a part of Policy No.    46-80019          *of the* WATER QUALITY INSURANCE SYNDICATE

Assured:   GENESIS MARINE, LLC

### ADDITIONAL VESSEL

For and in consideration of an additional pro-rata premium of          it is hereby understood and agreed that effective as shown, Insurance attaches on the following Vessel:

| VESSEL NAME | GT | EFFECTIVE DATE | LIMIT | ADDITIONAL PREMIUM |
|---|---|---|---|---|
| GM 1006 | 1754 | 6/30/14 | $5,000,000 | |
| GM 2002 | 1619 | 6/27/14 | $5,000,000 | |

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Countersigned in New York, N.Y.
    On June 24, 2014

Agent for the Individual Subscribers to
**WATER QUALITY INSURANCE SYNDICATE**